Turan v Union Modular Homes, LLC (2025 NY Slip Op 00128)

Turan v Union Modular Homes, LLC

2025 NY Slip Op 00128

Decided on January 9, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 9, 2025

CV-23-1179
[*1]Donna Turan, Appellant,
v
Union Modular Homes, LLC, et al., Defendants, and Westchester Modular Homes, Inc., Respondent.

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Miranda Law Office, Albany (Martin A. Miranda of counsel), for appellant.
Napierski, Vandenburgh, Napierski & O'Connor, LLP, Albany (Thomas J. O'Connor of counsel), for respondent.

Lynch, J.
Appeal from an order of the Supreme Court (James E. Walsh, J.), entered June 8, 2023 in Saratoga County, which, among other things, partially granted a motion by defendant Westchester Modular Homes, Inc. for summary judgment dismissing the amended complaint against it.
In April 2017, plaintiff inquired of defendant Westchester Modular Homes, Inc. (hereinafter Westchester) about constructing a two-story modular home on property she owned in Saratoga County. Westchester — a wholesale manufacturer of the components for modular homes — referred plaintiff to defendant Union Modular Homes (hereinafter Union) as its local authorized builder. Shortly thereafter, plaintiff contracted with Union to both acquire the modular components from Westchester and complete the construction of the home. As part of the transaction with Union, plaintiff signed a written "acknowledgement" on May 28, 2017 wherein she affirmed that the construction contract was only between herself and Union and that Westchester would have "no contractual responsibility or legal obligation" to her except for a limited warranty service it was agreeing to provide on the modular components. Under a separate arrangement between Westchester and Union, Westchester agreed to deliver and set the modular component parts on the foundation to be constructed by Union. In digging the foundation site during September 2017, Union encountered ground water that delayed the delivery and setting of the modular units until October 19, 2017. Thereafter, Union stopped work on the project before completion.
Raising a variety of issues as to defects in the work performed, including a claim that the foundation was set too low, resulting in ongoing water problems in the basement, plaintiff commenced this action against Union, Westchester and others alleging eight causes of action sounding in breach of contract, breach of warranty, negligence, unjust enrichment, money had and received, conversion, fraud and violations of General Business Law § 349. By decision and order entered March 13, 2019, Supreme Court (Crowell, J.) granted Westchester's motion to dismiss plaintiff's causes of action for breach of contract, conversion and an injunction. In particular, the court deemed the breach of contract claim barred by the May 2017 acknowledgment. Following discovery, Supreme Court (Walsh, J.) partially granted Westchester's motion for summary judgment to the extent of dismissing all but the breach of warranty claim. Plaintiff appeals.
Resolution of this appeal necessitates a closer review of the contractual relationships between the parties. In October 2016, Westchester and Union entered into a "Builder Sales Agreement" enabling Union to function as an authorized local builder of modular homes manufactured by Westchester. To do so, Union was obligated to comply with Westchester's "Builder Operations & Policies Manual." Pertinent here, Union was required to have a prospective purchaser execute an "Acknowledgement" — which[*2], as indicated above, plaintiff signed. The "Site Preparation Policy" required the builder to construct the foundation, cautioning that "[a] modular home cannot be positioned on a foundation that is not accurately built." Pursuant to a "Delivery Policy" and a "Set Policy," Westchester was responsible for delivering the modular home to the project site and setting the home on the foundation. Westchester's set crews were required to "[m]easure the foundation for length, width, squareness and levelness." The "Order Procedure" provided that modular homes could only be purchased from Westchester pursuant to an order submitted by an authorized builder, not the customer. Westchester also provided a "Limited Warranty" "to the builder of each new Westchester home that for one year from the date of delivery Westchester will provide free repair or replacement of (at the discretion of Westchester) all defects in material or workmanship with the exception of" specified non-warrantable items. Westchester also "provides a 10 [year] structural warranty thru 2-10 Home Buyers Warranty included with the sale of every Westchester home unless otherwise noted."
Correspondingly, plaintiff's contract with Union provided for Westchester to both deliver and set the house on the foundation constructed by Union, attaching both the "Delivery Policy" and "Set Policy" from Westchester's manual. Union expressly assumed no liability for any delay in delivery by Westchester. The contract required plaintiff to pay Union $205,000 for the "[m]odular [h]ome [o]rder" and $400,000 for "[b]uilder [s]ite [w]ork."[FN1] Consistent with the limited warranty outlined in the Westchester/Union agreement, the contract further specified that "[t]he modular components are governed by a ten (10) year structural warranty" to be transferred to plaintiff once Union received payment in full.
We turn first to plaintiff's argument that Supreme Court erred in dismissing the negligence claim against Westchester.[FN2] To sustain a common-law negligence claim, plaintiff must demonstrate that Westchester owed her a duty, breached that duty, and that she sustained injuries proximately resulting therefrom (see Ferreira v City of Binghamton, 38 NY3d 298, 308 [2022]). Plaintiff's negligence claim is premised upon two main theories: (1) that Westchester negligently referred her to Union as its exclusive builder of the modular home when it "knew or reasonably should have known" that Union would not complete the project in a suitable manner; and (2) that Westchester was negligent in setting the modular components on a foundation that was not suitable to receive them. Plaintiff's negligent referral claim was properly dismissed, as it is foreclosed by the plain language of the May 2017 acknowledgement wherein Westchester disclaimed any "promise, expressed or implied, concerning [Union's] performance of the [construction] contract" and plaintiff affirmed that her "decision to enter into a contract with [Union] [wa]s based upon[*3][her] independent investigation of and satisfaction with [Union]" (see Sommer v Federal Signal Corp., 79 NY2d 540, 553 [1992]).
We reach the opposite conclusion regarding plaintiff's negligent setting claim. Emphasizing that plaintiff "ha[s] a contract with Union and is the beneficiary of certain identified warranty provisions from Westchester," Supreme Court concluded that plaintiff's claim against Westchester was the equivalent of a claim for breach of contractual duties and, thus, any tort liability in this regard would be duplicative. In so holding, however, Supreme Court cited to Gruet v Care Free Hous. Div. of Kenn-Schl Enters. (305 AD2d 1060 [4th Dept 2003]), a case in which the defendant who sold the modular home was also contractually charged with both delivery and set up (id. at 1061). That is not the situation here, where a noncontracting party, i.e., Westchester, was required to perform delivery and set up (see Sommer v Federal Signal Corp., 79 NY2d at 551-552; compare Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 711 [2018]; Ahmad v Icon Legacy Custom Modular Homes, LLC, 170 AD3d 1304, 1307 [3d Dept 2019]; Kallman v Pinecrest Modular Homes, Inc., 81 AD3d 692, 693-694 [2d Dept 2011]). Although the amended complaint does assert a breach of warranty claim against Westchester, the warranty obligations are independent of Westchester's obligation to properly set the modular components on the foundation. As such, we do not agree that plaintiff's negligence claim should be barred as duplicative.
The further question is whether Westchester assumed a duty to plaintiff to exercise reasonable care in setting the modular components on the foundation given the interrelated contracts between plaintiff, Westchester and Union. We are mindful that "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]). Here, as reflected in the "acknowledgment," plaintiff did not have a direct contract with Westchester. Even so, the Court of Appeals has recognized three exceptions where a contracting party "may be said to have assumed a duty of care — and thus be potentially liable in tort — to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (id. at 140 [internal quotation marks, brackets and citations omitted]).
This is clearly not a situation where plaintiff was unknown to Westchester. To the contrary, the separate contracts as between plaintiff/Union and Union/Westchester are intertwined in that each contract called for Union to acquire the modular components from Westchester and for Westchester [*4]to set the components on the foundation constructed by Union — all to ultimately benefit plaintiff. In effect, Westchester assumed the type of " 'comprehensive and exclusive' " obligation delineated in the third Espinal exception to properly set the modular components (id. at 140, quoting Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 588 [1994]). For her part, plaintiff had no contractual choice but to rely on Westchester's performance. Moreover, Westchester played an active role in assisting plaintiff from the very beginning of the transaction, including accepting money directly from her before delivering the modular components to the premises. Considering the circumstances of the transaction and the nature of the parties' relationship, we agree with plaintiff that Westchester owed her a duty to take reasonable care in setting the modular components notwithstanding the absence of any direct contractual obligation flowing from Westchester to plaintiff (see Palka v Service Master Mgt. Servs. Corp., 83 NY2d at 587; Jones v County of Chenango, 180 AD3d 1199, 1200 [3d Dept 2020]; All American Moving and Storage, Inc. v Andrews, 96 AD3d 675, 675 [1st Dept 2012]; compare Espinal v Melville Snow Contrs., 98 NY2d at 138-139; Eaves Brooks Costume Co. v YBH Realty Corp., 76 NY2d 220, 226 [1990]).
Viewing the evidence in a light most favorable to plaintiff as the nonmoving party, we further conclude that there are triable issues of fact as to both breach and proximate cause precluding judgment as a matter of law in favor of Westchester (see Vega v Restani Constr. Corp., 18 NY3d 499, 502 [2012]). Mike McLaughlin, a regional sales manager for Westchester, acknowledged during his deposition that Westchester was responsible for ensuring that the site foundation was ready to receive the modular components before setting them. McLaughlin further recognized that it would not be good practice to set a house on a foundation sitting in ground water and the record confirms that Westchester was well aware that Union's subcontractor hit the water table, causing issues with sitting ground water, a postponement of the original set date and the laying of additional stone beneath the foundation footings for drainage purposes. Although McLaughlin and Westchester's subcontractor who set the components did not believe that ongoing ground water issues remained on the set date, McLaughlin's testimony in this regard was equivocal and the record contains evidence from which a contrary conclusion could be drawn.[FN3] There was also evidence that the foundation walls were not inspected by the town building inspector before Westchester set the modular components. In these circumstances, we find questions of fact as to whether the foundation was suitable to receive the modular components on the set date and, if not, whether installation at that time caused damage to the property (see Jones v County of Chenango, 180 AD3d at 1201). To the extent Supreme Court reasoned that the project [*5]site was sufficiently dry to allow Westchester to set the components, it erred in making a credibility determination at this juncture of the proceeding.
We do find that Supreme Court properly dismissed the quasi-contract claims against Westchester alleging unjust enrichment and money had and received. No quasi-contract or unjust enrichment claim lies where a contract exists covering the same subject matter, even against a nonsignatory to the contract (see Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist., 63 AD3d 1556, 1557 [4th Dept 2009], lv dismissed 13 NY3d 792 [2009]; Feigen v Advance Capital Mgt. Corp., 150 AD2d 281, 283 [1st Dept 1989], lv dismissed & denied 74 NY2d 874 [1989]). Here, the contract between plaintiff and Union governs the same subject matter, along with a viable breach of warranty claim against both Union and Westchester for any structural defects in the modular components (see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1256-1257 [3d Dept 2016]; see generally Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388-389 [1987]).
Supreme Court also properly dismissed the General Business Law § 349 claim against Westchester. General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" (General Business Law § 349 [a]). Pertinent here, the statute "prohibits deceptive acts and practices that misrepresent the nature or quality of products and services" (Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.,37 NY3d 169, 176 [2021])."A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances" (id. at 178 [internal quotation marks and citation omitted]). "What is objectively reasonable depends on the facts and context of the alleged misrepresentations and may be determined as a matter of law or fact (as individual cases require)" (id. [internal quotation marks and citation omitted]).
Plaintiff emphasizes that Westchester's marketing materials advertised that it "provide[s] [its] local builders with complete turn-key construction [and] services: from permit and zoning approvals, site development, engineering, design [and] architectural services with expert delivery and set systems" and that it "works with local builders and contractors to complete the modular home process on-site." She alleges that these representations were materially misleading insofar as Westchester's role in the transaction was significantly more limited than advertised. We agree with Supreme Court that the General Business Law § 349 claim cannot stand. Plaintiff's claim that she was misled is undermined both by her separate contract with Union and the acknowledgment she signed indicating that Westchester's role in the transaction would be limited to delivering and setting the modular component parts on the site [*6]foundation and providing certain warranty work in the event an issue arose (see Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender, 37 NY3d at 179).
Finally, we agree with plaintiff's contention that Westchester's warranty is not limited to the four specific items delineated in Supreme Court's decision. In a "Statement of Material Facts Not in Dispute" (see 22 NYCRR 202.8-g), Westchester acknowledged that, if proven, defects with respect to wiring placement, the installation of cabinets, a floor joint and a bathroom wall would be covered under Westchester's limited warranty — and Supreme Court so found. That concession, however, does not limit the scope of the limited warranty, which, as noted above, embraces "all defects in material or workmanship" of the modular home components, which are covered by "a 10 [year] structural warranty." Questions of fact remain as to whether there are additional defects to the modular components within the scope of Westchester's warranty coverage. Plaintiff's remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Garry, P.J., Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant Westchester Modular Homes, Inc.'s motion for summary judgment dismissing the fourth cause of action for negligence and limited the scope of Westchester's limited warranty; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: As it turned out, plaintiff actually made a direct payment to Westchester in the amount of $158,866 to secure timely delivery of the modular home components.

Footnote 2: The fourth cause of action in the amended complaint asserted a negligence claim against all defendants, but this dispute focuses solely on the dismissal of the negligence claim as against Westchester.

Footnote 3: We make this determination without regard to the conclusions set forth in plaintiff's unsworn professional engineering reports, which were not in admissible form (see Halcyon Constr. Corp. v Strong Steel Corp., 199 AD3d 898, 899 [2d Dept 2021]; Ellis v Willoughby Walk Corp. Apartments, 27 AD3d 615, 616 [2d Dept 2006]).